**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| United States of America, | Case No. 2:24-cr-00653-RMG |
| v. | |
| Don Michael Rynn | **ORDER** |

This matter is before the Court on Defendant's motion for new trial. (Dkt. No. 82). The Government responded in opposition to Defendant's motion. (Dkt. No. 85). For the reasons set forth below, the Court denies Defendant's motion.

**I.   Background**

   **A.  Indictment**

Defendant was charged in a three-count Indictment with two counts of Making a False Statement under 18 U.S.C. § 1001 and one count of Falsifying Records with the Intent to Impede, Obstruct, or Influence the Proper Administration of Any Matter within the Jurisdiction of Any Department or Agency of the United State under 18 U.S.C. § 1519.

The Indictment alleged that Defendant submitted a false fishing trip report form on April 19, 2023 to the National Oceanic and Atmospheric Administration ("NOAA"). The Indictment alleged that the trip report was not accurate because it did not accurately report the amount of Snowy Grouper and Tilefish caught by the fishing vessel Maximum Retriever on a commercial fishing trip that ended on March 27, 2023. The Indictment also alleged that the Defendant made materially false statements about the alleged overage to federal agents on or about October 30, 2023. Count One, one of the Making a False Statement counts, and Count Three, the Falsifying Records count, relate to the April 19th trip report. Count Two, the other Making a False Statement count, relates to the October 30th statements.

The elements of 18 U.S.C. § 1001(a) are as follows:

1. The Defendant made a materially false, fictitious, or fraudulent statement or representation;

2. The fact was material to a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States; and

3. The Defendant acted knowingly and willfully.

The elements of 18 U.S.C. § 1519 are as follows:

1. The Defendant altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry in any record, document or tangible object;

2. The Defendant did so with intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States; and

3. The Defendant did so knowingly.

**B. Factual Background and Trial**

Defendant managed several commercial fishing vessels in the McClennaville, South Carolina area. Two boats that Defendant managed were the Maximum Retriever and the Crystal C. Both boats were operated out of the Carolina Seafood dock in McClellanville.

On March 21, 2023, the Maximum Retriever embarked on a commercial fishing trip captained by Defendant's son, Aaron Rynn. The Maximum Retriever returned from this trip on March 27, 2023 and reported the following fish counts on its trip report form dated March 27, 2023:

- 200 pounds Snowy Grouper
- 279 pounds Tilefish.

On March 27, 2023, the Crystal C also unloaded from a commercial trip completed the day before. The Crystal C was captained by Rocky Altman. The Defendant did not submit a trip report

for the Crystal C for this trip, but Carolina Seafood's dealer report for the Crystal C from March 27, 2023 set forth the following fish counts purchased from Crystal C:

- 160 pounds Snowy Grouper
- 171 pounds Tilefish.

Rocky Altman testified that he did not unload the Crystal C's fish when it returned on March 26th and that he had to wait until the following morning when a Carolina Seafood employee was present to tally the fish. Mr. Altman testified that when he arrived at Carolina Seafood the morning of March 27 he saw fish he did not catch being offloaded from Crystal C and left immediately.

On March 27, 2023, South Carolina Department of Natural Resources received a phone tip of suspected commercial fishing overage. The tipster stated that Defendant and the Maximum Retriever had caught an overage of Snowy Grouper and that the overage was brought to Independent Seafood in Georgetown, South Carolina.

Howell Williams operated Independent Seafood in March 2023 and testified at trial that, on the morning of March 27, 2023, Defendant brought 200 pounds of Snowy Grouper to Independent Seafood.

In March 2023, the commercial trip limit for Snowy Grouper was 200 pounds and the commercial trip limit for Tilefish was 300 pounds, no matter how long the duration of the boat's trip. The Government alleged that the Maximum Retriever caught 560 pounds of Snowy Grouper (sum of the 200 pounds reported on the Maximum Retriever March 27 trip report, the 160 pounds reported on Carolina Seafood's dealer report for the Crystal C, and the 200 pounds allegedly taken to Independent Seafood). The Government also alleged that the Maximum Retriever caught 450 pounds of Tilefish (sum of the 279 pounds reported on the Maximum Retriever March 27 trip

3

report and the 171 pounds reported on Carolina Seafood's dealer report for the Crystal C). The Government alleged that Defendant directed and facilitated moving fish off the Maximum retriever and onto the Crystal C and to Independent Seafood to hide the overage.

NOAA regulates the fishing industry partly through self-governance. NOAA requires fisherman and dealers to complete forms that provide the agency with data it needs to maintain and manage the country's fisheries. Commercial fishing permit holders, or the individuals operating or managing their vessels, are required to submit trip reports after each fishing voyage. These trip reports include the vessel name and number, the vessel operator, and an itemization of the number of fish caught. Federally permitted commercial fish dealers are required to complete dealer reports itemizing the types and poundage of fish purchased after they are landed. These dealer reports list the vessel name, captain of the vessel, types and pounds of the fish offloaded, and the price for each fish.

At trial the Government called two witnesses employed by NOAA whose testimony is relevant to the current motion. The NOAA witnesses discussed the management of the fisheries and the conservation of certain species of fish. The two witnesses testified how the agency uses trip and dealer reports to produce spreadsheets and summaries for fishery biologists, who would in turn adjust per trip limits based on what is reported. The witnesses further stated that the goal of this work was to sustain species of fish and prevent overfishing. The jury heard specific testimony about the current fish stock of Snowy Grouper and a Snowy Grouper rebuilding plan designed to conserve the species.

Evidence closed at the end of the second day of trial, and closings were set to begin on the morning of the third day.

During the Government's rebuttal at closing argument, the Prosecutor made three references that Defendant objected to at trial. First, the Prosecutor referenced the "Crying Indian ad," which was a public service announcement that was on television starting in the 1970s made by a group called Keep America Beautiful. The Prosecutor stated that the advertisement was about littering and depicted a Native American paddling a through a stream that is at first clean and beautiful but later becomes dirty and full of garbage and that the Native America slowly cries one tear as he looks at the pollution. Second, the Prosecutor read from the Bible Genesis 1:26-28: "26 The said God, 'Let us make mankind in our image, in our likeness, so that they may rule over the fish in the sea and the birds in the sky, over the livestock and all the wild animals, and over all the creatures that move along the ground.' 27 So God created mankind in his own image, in the image of God he created them; male and female he created them. 28 God blessed them and said to them, 'Be fruitful and increase in number; fill the earth and subdue it. Rule over the fish in the sea and the birds in the sky and over every living creature that moves on the ground.'" Third, the Prosecutor referenced Lowcountry community values of environmental conservancy, naturalism, and the importance of local water resources. The Court overruled Defendant's contemporaneous objection at trial.

After overruling Defendant's objection to the rebuttal comments, the Court charged the jury with the law before deliberations began. The jury returned a verdict convicting Defendant on all three counts.

Defendant now makes a motion for a new trial arguing that the Prosecutor's rebuttal was improper and an emotional appeal to the jury that deprived Defendant of his right to a fair trial. The matter is now ripe for the Court's review.

## II. Standard

Federal Rule of Criminal Procedure 33 provides that a trial court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial under Rule 33 must be filed within 14 days of the verdict, except for a claim of newly discovered evidence. Fed. R. Crim. P. 33(b)(2). "When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government" and "may evaluate the credibility of witnesses." *Id.* However, a trial court "should exercise its discretion to grant a new trial sparingly," and should grant it "only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997) (internal quotation marks omitted)); *see also United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (noting "a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it") (quoting *Perry*, 335 F.3d at 320).

## III. Discussion

Even assuming that the rebuttal comments were improper, the question of reversal must be "gauged from the facts of each trial." *United States v. Harrison*, 716 F.2d 1050, 1051 (4th Cir. 1983), *cert. denied*, 466 U.S. 972 (1984). "A prejudicial argument by the prosecutor poses a serious threat to a fair trial," *Miller v. North Carolina*, 583 F.2d 701, 706 (4th Cir. 1978), but "improper remarks during closing argument do not always mandate retrial," *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993). A new trial is warranted only when the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

The Fourth Circuit has identified a number of factors that should be considered when evaluating whether a prosecutor's remarks prejudiced the Defendant, including: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993) (citing *Harrison*, 716 F.2d at 1052).

Even assuming that the Prosecutor's statements were improper, the Court is not persuaded that the rebuttal comments substantially prejudiced the Defendant's trial.

The rebuttal comments did not tend to mislead the jury or prejudice Defendant because the jury heard trial testimony along the same lines. The jury heard trial testimony from Government witnesses about sustainable fishing, the conservation efforts of Snowy Grouper and Tilefish, and the significance of trip and dealer reports in NOAA's management of the fisheries. The jury heard specific testimony about the current fish stock of Snowy Grouper and a Snowy Grouper rebuilding plan designed to conserve the species. Managing the fisheries and conserving the species was a theme repeatedly discussed during the trial.

The rebuttal comments were not extensive and occurred at the end of a three-day trial.

Absent the rebuttal remarks, there was considerable strong competent proof introduced to establish the guilt of the Defendant. The Government introduced testimony from Aaron Rynn, Defendant's son and the captain of the Maximum Retriever for the March 21-27 trip. Aaron Rynn stated that Defendant told him to catch as many fish as he can and that they would address any overages when he returned to the dock. The Government also showed video evidence of the Crystal C being maneuvered next to the Maximum Retriever at the Carolina Seafood dock and the crew

7

of the Maximum Retriever moving fish around the boats. The same video footage showed fish being taken in the direction of the parking lot at Carolina Seafood. The Government also introduced testimony from Howell Williams, the owner of Independent Seafood, who stated that Defendant brought him 200 pounds of Snowy Grouper on the morning of March 27. The Government also introduced testimony from Rocky Altman, the captain of the Crystal C for the voyage ending on March 26. Mr. Altman stated that when he arrived at Carolina Seafood to unload the fish from the Crystal C he saw types of fish he did not catch, Snowy Grouper and Tilefish. The Government offered this evidence in support of its theory that the Maximum Retriever actually caught 560 pounds of Snowy Grouper and 450 pounds of Tilefish which was divided among three locations (the Maximum Retriever, the Crystal C, and Independent Seafood) in order for Defendant to illegally fill out Maximum Retriever's trip report so that the amount of fish caught was under the legal limit. This competent evidence strongly supported the Government's theory and Defendant's guilt.

There is no indication that the rebuttal comments were deliberately placed before the jury to divert attention to extraneous matters. The rebuttal comments relate to the materiality element of § 1001(a) and the proper administration element of § 1519. For § 1001(a), the Government had the burden to demonstrate to the jury that the false statement "was material to a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." For § 1519, the Government had the burden to demonstrate to the jury that Defendant falsified a document "with intent to impede, obstruct, or influence the . . . proper administration of [a] matter within the jurisdiction of any department or agency of the United States. The rebuttal comments generally relate to the role of humans in conserving the environment. That theme directly ties to the testimony that NOAA relies on accurate trip and dealer reports to sustain and

conserve the country's fisheries. Because the rebuttal comments relate to elements of the charged offense and because the Government has the burden to prove each element, the Court finds that the Prosecutor's remarks were not intended to divert attention to matters unrelated to the charges.

The Court therefore concludes, based on the factors outlined in *Mitchell*, that the Prosecutor's comments did not affect the jury's ability to judge the evidence fairly or substantially prejudice Defendant.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion for new trial. (Dkt. No. 82).

                                                  s/ Richard Mark Gergel
                                                  Richard Mark Gergel
                                                  United States District Judge

June 2, 2025
Charleston, South Carolina